# 𝕷𝖆𝖜 𝖆𝖓𝖉 𝕰𝖖𝖚𝖎𝖙𝖞

IN THE

# SUPREME COURT

OF THE

## STATE OF NEW YORK.

---

JAMES RODGERS *vs.* JAMES BONNER and REBECCA his wife, MONTGOMERY PELTON, JARED C. WILLIAMS, Sheriff &c., JOHN CROUSE, JOHN J. CROUSE, DANIEL E. CROUSE and COURTLAND D. HUSTED.

In regard to real estate, it is not necessary that an officer holding an execution, or an attachment, go upon the property; it is not necessary that it should be even within his view. He must undoubtedly do some act; make some entry or memorandum indicative of his intention; but having done that, with such purpose in his mind, although he makes no vocal proclamation of the fact, he has made a legal levy.

A sheriff, having attachments against the defendant's property, went to the house of the defendant, where he resided, with the view of levying the same on the latter's property. He made no proclamation to the defendant that he should seize or levy on the house and lot, upon the attachments, but he did, on the same day, make a pencil memorandum, on a loose piece of paper, of the house and lot, with the intent, as the referee found, to seize the same on the attachments; and early the next morning, the clerk of the sheriff, by his

Rodgers *v.* Bonner.

direction, indorsed upon the attachments a memorandum of the seizure under the attachments, but the same was not then fully completed, or signed by the sheriff until some days thereafter. He subsequently put the house and lot into the inventory of the property seized under the attachments.

*Held* that the sheriff having entered upon the premises and there performed an act which in view of the intent with which it was done, was unequivocal in its nature, this constituted a valid levy; especially in view of the acts that followed, which referred and related back to the original entry made by the officer, and which, taken together, constituted the one act of a levy, under and by virtue of the attachments.

It is not necessary to the validity of a levy made under an attachment, that the warrant be returned to the officer issuing it.

If there is any statutory provision touching the return of an attachment to the officer issuing it, the statute is merely directory to the officer, and his omission to do his duty cannot be availed of in a collateral action, to defeat the remedy of the plaintiff in the attachment suits.

The omission to file a notice of *lis pendens*, in an attachment suit, until after another creditor has obtained a judgment against the defendant, has no effect to postpone the lien of the attachment to that of the judgment.

Such notice, or the want of it, only affects a subsequent purchaser or incumbrancer whose conveyance or incumbrance is afterwards executed or recorded. As respects a mere judgment creditor, it is never necessary that he should have notice of a prior lien, in order to give it priority.

It is not necessary to a valid execution of an attachment against real estate, that a copy of it should be served on the debtor.

Section 235 of the Code embraces shares of stock, or debts due the judgment debtor, and which are incapable of manual delivery, and not real estate; which is not in any sense within the language or spirit of the section.

APPEAL from a judgment entered upon the report of a referee.

The action was brought for the purpose: (1.) Of having a conveyance by James Bonner, of lot 101 East Fayette street, Syracuse, to his wife, declared fraudulent and void as against the plaintiff's judgments. ' (2.) Of establishing the priority of the lien of the plaintiff's judgments upon said lot, over attachments issued by the defendants Crouse and others, and for the payment of the proceeds of the sale thereof in the hands of the sheriff, to the plaintiff, to apply on his judgments.

The answer of James Bonner and wife was a general denial of the complaint. The answer of the defendants

Crouse & Co., with whom the sheriff joined, set forth the attachments and alleged a seizure of the real estate thereon on the 26th day of November, 1866, and claimed priority on account of said attachments and the seizure of said real estate thereon before the plaintiff's judgments. They also united with the plaintiff in claiming that the conveyance from Bonner to his wife was fraudulent and void as to his creditors.

The referee found the following facts, viz: That on or about the 25th day of November, 1866, the defendants James Bonner and Montgomery Pelton having been co-partners in the grocery business in the city of Syracuse, failed, being largely indebted at the time to numerous individuals, and in fact, insolvent. Prior to that time, and on the 9th day of April, 1864, Robert M. Pelton obtained a judgment against them, to secure advancements and indorsements, to the amount of $4000, which on that day was docketed in the clerk's office of Onondaga county, and became the first lien on the real estate of this defendant in said county, and especially upon the house and lot of James Bonner, which he then owned and occupied in the city of Syracuse, known as No. 101 Fayette street. On the 24th day of November, 1866, a judgment was obtained against James Bonner and John W. Williams, by confession, for $2126.97, and docketed the same day in the clerk's office of Onondaga county. Executions were issued upon both of these judgments to the sheriff of Onondaga county on the 24th day of November, 1866. On the 26th day of November, 1866, the firm of Crouse & Co., consisting of the defendants John Crouse, John J. Crouse, Daniel E. Crouse and Courtland Husted, commenced suits and obtained attachments against the property of Bonner & Pelton and James Bonner, and gave the warrant of attachment to said sheriff of Onondaga county on that day, to be served, and on the 18th day of December, 1866, obtained judgments in said suits, one against

said Bonner & Pelton for $1463.34, and another against James Bonner for $320.71, and both judgments were on that day docketed in the clerk's office of Onondaga county, and executions on the same day issued and delivered to the said sheriff for the collection of said judgments respect-ively. Notices of *lis pendens* in said attachment suits were filed in the county clerk's office, April 9, 1867. The sheriff, on receipt of the execution in favor of Robert M. Pelton and John W. Williams, November 24, 1866, levied upon the personal property of Bonner & Pelton. On the 26th day of November, 1866, the said sheriff, on the receipt of the attachments in the suits of Crouse & Co. against Bon-ner & Pelton and James Bonner, levied upon the personal property already seized upon the above execution, and proceeded to the house in question, number 101 Fayette street, where James Bonner and wife resided, to look for the books of account of Bonner & Pelton, which he sup-posed to be at the house, on which to levy the attachments, but was unable to find them there. He did not inform Jas. Bonner or his wife that he had seized or should seize the said house and lot on the said attachments, but he did in fact on that day make a pencil memorandum on a loose piece of paper, of said house and lot, with the intent thereby to seize the same on said attachments. On the next morn-ing, between the hours of seven and eight in the forenoon, an indorsement was made on the said attachments without the signature of the sheriff, by which it was claimed that he had on the 26th day of November, 1866, seized upon said attachments all the property of said defendants therein. This indorsement was made by a clerk in the office, but was not signed by the sheriff, for the reason that he thought it was not particular enough in mentioning such seizure, and that it ought to mention the real estate.

The sheriff, on the said 27th day of November, pro-ceeded to prepare an inventory of the property seized upon said attachments, and completed the same on the 30th

day of November, 1866; the property so seized having been fully inventoried and appraised on that day, and the appraisal sworn to. This inventory, instead of having been handed to the judge who issued the attachments, was, on the fourth day of December, 1866, filed with the clerk of Onondaga county.

Afterwards, and after asking counsel, the sheriff finished his return on said attachments, and therein stated, among other things, that on the 26th day of November he seized, by reason of said attachments, the house and lot number 101 Fayette street, Syracuse, and signed the said return as thus completed, and dated the same November 27th, 1866.

On the said 27th day of November, 1866, the plaintiff and one William C. Rodgers recovered a judgment against James Bonner and Montgomery Pelton for $2734.27 by confession, and on the same day James Rodgers, the plaintiff herein, recovered a judgment against Bonner & Pelton for $710.65 by confession. Said judgments were docketed in the clerk's office of Onondaga county, at nine o'clock in the forenoon of the same day. Executions were immediately issued on said judgments and delivered to the said sheriff for collection. The sheriff held the executions in favor of Crouse & Co., the execution in favor of James Rodgers, and James and William C. Rodgers, as well as executions in favor of Robert Pelton and John W. Williams, when the personal property was sold, and sufficient personal property was sold to satisfy in part the executions in favor of Pelton and Williams. The executions in favor of James Rodgers and James and William C. Rodgers were, by direction of the plaintiff's attorneys, returned, and were returned *nulla bona*, before the sale of the house and lot, as hereinafter mentioned. And prior to the commencement of this action, William C. Rodgers transferred, sold and released to James Rodgers his interest in said judgments of James and William C. Rodgers against said Bonner & Pelton.

After the judgment of Robert Pelton, and before the recovery of any other judgments, on July 30th, 1866, James Bonner and wife conveyed to one James Gilbert the house and lot in question, and on the same day the said James Gilbert conveyed the same to Rebecca Bonner, the wife of James Bonner. The object of this conveyance was to vest the title of the said house and lot in Rebecca Bonner, the wife of said James Bonner.

On the 28th of May, 1867, the sheriff sold the house and lot on the execution then in his hands, for something over $3000—the said premises being purchased in by the firm of Crouse & Co., except Courtland Husted, who did not join in the purchase, but on the sale, the sheriff satisfied the balance due on the execution in favor of Robert Pelton and John W. Williams, leaving a balance on hand of $1398.22.

The referee stated in his report that it was satisfactorily established before him by evidence produced on behalf of the plaintiff, that the said conveyances were voluntary and without consideration passing between Bonner and wife, and that they were executed with the intent to delay and defraud the creditors of said Bonner. And it was mutually agreed by the attorneys of the respective parties, that the said conveyances should be held fraudulent and void as against the creditors of James Bonner and the creditors of Bonner & Pelton, the said Bonner at the time of said conveyance being in fact insolvent, and unable to pay his debts; but it was agreed that the taxable costs of her attorney should be paid out of the fund, and that the decree setting aside said conveyances might be paid. And that as he was satisfied from the evidence that the sheriff, when he made the memorandum on the 26th day of November, 1866, intended to seize the house and lot in question, and afterwards put the same into the inventory of the property seized under the said attachments, he found as rulings of law that he seized said house and lot

Rodgers *v.* Bonner.

before the lien of the plaintiff's judgment attached, and that the defendants Crouse & Co. were entitled to priority in the payment of their said judgment, over the judgments of the plaintiff; the circumstances attending and following the making of the memorandum, leaving no doubt in the referee's mind that the sheriff made said memorandum for the purpose of seizing and holding said house and lot upon the said attachments. And he decided that the defendants Crouse & Co. were entitled to have their judgment first satisfied out of the balance of the proceeds of the sale of said house and lot; which balance was $1398.42, not sufficient to satisfy the judgments in the attachment suits. And he ordered a judgment setting aside the conveyance from Bonner and wife to Gilbert, and from Gilbert to Bonner's wife, as against creditors, with taxable costs to be paid to Bonner's attorney out of the fund in question, and without costs as between the other parties; declaring the lien of the attachments in question prior, in point of time and right, to the lien of the plaintiff's judgments; and authorizing and requiring the sheriff to pay the surplus in his hands to the defendants Crouse & Co., when demanded.

From the judgment entered upon this report, the plaintiff appealed.

*W. & A. B. Porter,* for the appellant. I. The lien of the plaintiff's judgment is entitled to a preference over the attachment of Crouse & Co. 1. The proceedings necessary to perfect a lien of the attachments have never been completed, or if completed, were not completed until after the plaintiff's judgments were docketed, November 27, 1866, at 9 o'clock A. M. The statutes (*Code,* § 232, and 2 *R. S. p.* 4, § 8) require that the inventories shall be returned to the officer who issued the warrant. The inventories in this case have never been returned. A failure to *make* an inventory could not be more fatal to the lien of

the attachment than the omission to *return* it. The *making* of the inventory is no more imperatively enjoined by the statute than its *return*, and that a failure to make an inventory would be fatal cannot be denied. (*Drake on Attachments*, 235.) 2. As the real estate in question was not susceptible of *manual* delivery, to constitute a valid levy, a copy of the warrant of attachment, and a notice showing the property levied upon, should have been left by the sheriff with Bonner or his wife, according to section 335 of the Code. This was not done. (*Thompson on Prov. Rem.* 436, § 8. *Brownell* v. *Carnley*, 3 *Duer*, 9.) 3. Notice of *lis pendens* in the actions of Crouse & Co. against Bonner, as provided by section 132 of the Code, were not filed until long after the recording of our judgments. (*Hoffman's Prov. Rem.* 427. See *Voorhee's Code of* 1867, *p.* 423, note *a ; Learned* v. *Vandenburgh*, 7 *How.* 379.) The case of *Burkhardt* v. *Sanford*, (7 *How.* 329,) in which the judge, giving the opinion, expresses a different doctrine, was decided before the amendment of section 132, providing for the filing notice of *lis pendens* in cases of attachments. 4. Should it be held that a levy on the real estate in this case could have been made without returning the inventory, then it is evident that no such lien or levy was made until the perfecting the inventories, Nov. 30th, three days after the plaintiff's judgments were entered, (*Burkhardt* v. *McClellan, in Court of Appeals, reported in note,* 15 *Abb. R.* 243,) as that was the only *open, public* or *unequivocal* act of the sheriff, asserting a determination to seize the land. 5. Again ; if it should be held that a lien by the attachments could be created short of making and returning the inventories, it must be done by some act constituting a levy or seizure at common law. Such act must consist of an *open, public* and *unequivocal* assertion of claim or dominion over the premises by virtue of the attachments. (*Beekman* v. *Lansing*, 3 *Wend.* 450. *Barker* v. *Binninger*, 14 *N. Y. Rep.* 270. *Price* v. *Shipps*, 16 *Barb.* 585. *Hoff-*

Rodgers *v.* Bonner.

*man's Prov. Rem.* 428.) The plaintiff should openly claim to seize the land under the attachments. (*Learned* v. *Vandenburgh,* 8 *How.* 78.) Nothing should be done, or omitted, calculated to cast concealment over the transaction. (*Beekman* v. *Lansing,* 3 *Wend.* 450.) Nothing of this kind constituting a levy was done by the sheriff prior to 9 o'clock on the 27th November, at which time our judgments were docketed. Up to that hour, all that was done by the sheriff was on the evening of the 26th November, to go upon the premises in search of Bonner's books, saying nothing to Bonner or his wife upon the subject of seizing the premises on his attachments. Thereafter, on the same day, he made a pencil memorandum on a loose piece of paper, of the house and lot in question, with the intent, as found by the referee, to seize the same. This, it is manifest, falls far short of constituting a levy upon or seizure of the premises in question, within the authorities defining a *levy.* (*a.*) The making of a memorandum on a loose piece of paper, of the property intended to be levied upon, is of itself no act constituting or having a tendency to constitute a levy. (*b.*) The act was not *open, public* or *unequivocal,* as required in *Beekman* v. *Lansing,* above cited. (*c.*) The conduct of the sheriff, if he intended this act as a levy, was calculated to "cast concealment over the transaction," as he kept such intention a secret from Bonner and wife, and also previously informed Bonner that the attachments were against his goods and chattels and live stock. It will not be claimed that the partial return indorsed by Goodell on the attachments on the morning of the 27th was any act of the sheriff, as he disaffirmed it. It did not profess to embrace the lot in question, and for that reason was disapproved of by the sheriff. The making of the pencil memorandum seems, therefore, to constitute the only act done by the sheriff towards making a levy under the attachments. When requested to find that this did not constitute a levy or seizure of the land in

Rodgers v. Bonner.

question, the referee refused to do so, but immediately proceeds so to find in substance, by finding " that the making of the pencil memorandum of the house and lot with the intent thereby to seize the same on said attachments, and his *subsequent proceedings*, taken together, constituted a levy." As the plaintiff's judgments were docketed before the " subsequent proceedings " were had, and which the referee seems to think were necessary to constitute a levy or seizure, it follows that he must conclude that the attachment became a lien before seizure under them; which is contrary to all authorities.

II. The referee erred in allowing Evans, the under sheriff, to testify as to his intention in making the pencil memorandum on the loose piece of paper. 1. The making of the memorandum, of itself, was no act tending to a *seizure* of the land. Such being the case, the *intention* of the officer cannot change its nature. As well might any other irrelevant act be converted into a levy or seizure by showing the intention of the officer that it should be such. It is an attempt to show a levy by the mere volition of the officer. (8 *How.* 78.) 2. A witness should not be allowed to testify to the secret operations of his mind, with a view to affect the interests of others. The only case where such evidence has been allowed, is that when the *intent* of the witness has been made a material fact by statute; e. g., the intent to defraud creditors by a sale or mortgage of property. It is manifest that this testimony of the witness of his intention swayed the mind of the referee, as he finds that the sheriff made the memorandum with *intent* to seize the lot in question. Were it not for this evidence, the entire *silence* of the sheriff of his intention to make such levy, his declarations to Otis, " that he regarded an attachment a lien upon real estate the same as a judgment, from the time it was issued, and that he had done nothing else in regard to the attachment in question," would lead to

Rodgers *v.* Bonner..

the belief that he did *not* intend the pencil memorandum as a levy

*D. Pratt*, for the respondents.   I. The statute in nowise prescribes the ceremony necessary to be observed in order to make a legal seizure of land under an attachment.   It simply prescribes that the sheriff, upon receiving the warrant, shall immediately attach all the real estate of the debtor and all his personal estate, and shall make and return an inventory.   (*Code*, § 232.   1 *R. S.* 4, § 728.)

II.  What shall constitute a legal seizure of real estate under an attachment, therefore, must depend upon the practice established by the courts.   Under that practice it is not necessary that the officer go upon the premises, or even into the vicinity, or do any act, except to make a memorandum of the premises, and in due time make a return of the attachment with an inventory of the property attached.  1.  When the inventory is made, it relates back to the time of the levy, and the lien takes effect from that time.  2.  The officer having a reasonable time to make the inventory, is not obliged to make a full return before that time ; and then it will relate back and take effect as of the time when the first act in the proceedings was performed.  (*Greenleaf* v. *Mumford*, 30 *How.* 30.)  (*a.*)  In *Perrin* v. *Leverett*, (13 *Mass. Rep.* 128,) the officer, in making a levy upon a pew in a church, went to the church door and found it locked.   It does not appear that he did anything else.   He afterwards returned that he had attached all the right, title, interest, &c., which the court held sufficient. (*b.*)  It is manifest in that case that the court did not think it necessary that even a memorandum should be made. 3.  It is not necessary that the memorandum or return should describe particularly the premises.   (*a.*)  In *Crawley* v. *Allen*, (5 *Maine Rep.* 453,) the return by the officer was that he had attached the "right, title and interest of the within named ——, as to real estate in Belfast and Thorn-

dyke;" the defendant held an interest as tenant in common, in some real estate in Belfast; held good. (*b.*) In *Perrin* v. *Leverett*, (*supra*,) the return was "that he had attached all the right, title and interest and estate which the within named had in and to said meeting-house, (meaning thereby to attach the pew No. 82 in said house,) but the doors being closed I could not enter the house." (*c.*) In that case the contest was not whether this return at the time it was made constituted a sufficient levy, but whether the facts stated showed a seizure at a prior time. The strife was between two attaching creditors. The officer in this case went about $4\frac{1}{2}$ P. M. to the door and could not get in. The officer, with second attachment, went at 5 o'clock, entered the church, and made a levy; that was not questioned. The court held the prior levy sufficient. (*d.*) In *Taylor* v. *Mixter*, (11 *Pick.* 341,) the return was that the officer had attached the homestead upon which —— resides, and all land in the town. It was held that the latter clause was sufficient to include a lien upon a twenty-five acre lot not attached to the homestead. (*e.*) In *Learned* v. *Vandenburgh*, (7 *How. Pr.* 379, *aff.* 8 *id.* 78,) the return stated that he had attached all the *real and personal property* of the defendant, which was held sufficient. 4. The return is conclusive, and cannot be questioned collaterally. (*Learned* v. *Vandenburgh, supra. Perrin* v. *Leverett, supra. Evans* v. *Parker*, 20 *Wend.* 622. *Stoors* v. *Kelsey*, 2 *Paige*, 418. *Gra. Pr.* 409.)

III. There was a sufficient levy in this case, made at least as early as eight o'clock in the morning of the 27th day of November, 1866, and before the docketing of the plaintiff's judgments. 1. It will not be contended but that the return of the sheriff upon the warrant, with the inventory, shows a sufficient levy as early as the time above suggested. 2. If the fact of the levy at that time is now open for inquiry, notwithstanding the return and inventory, the proof shows there was amply enough done to consti-

Rodgers *v*. Bonner.

tute a legal levy. (*a.*) The officer, with the warrant of attachment, went to the premises, and with the design of making a levy made a memorandum on paper of the number of the lot. That was much more than was done in the case of *Perrin* v. *Leverett*, (*supra.*) (*b.*) Early next morning he had a more formal levy indorsed upon the warrant, of the fact of having attached the property of the defendant, having at the same time a memorandum of the number of the lot upon a separate piece of paper. (*c.*) The general allegation that he had attached the property of the defendant was sufficient, within the cases cited under point II. (*d.*) But a more particular return was afterwards made and signed by the sheriff, which made it unnecessary to preserve the original memorandum any longer, and which cannot now be questioned in this collateral suit. 3. It is not necessary that the first memorandum should be made upon the writ or warrant. A levy upon personal property is almost uniformly entered in the first place upon a separate piece of paper. (*a.*) Indeed the levy upon personal property is seldom entered or indorsed upon the attachments or executions. (*b.*) The inventory is designed to be the only memorandum describing the property levied upon by an attachment, and if no lien can accrue until the inventory is made, it would, in a great many cases, defeat the whole purpose of an attachment. 4. The sheriff manifestly intended to do all that was necessary to make a legal levy, and it would be very severe upon him to make him liable for the amount of the Crouse judgments, for mere technical omissions, not affecting any substantial right. 5. But it is submitted that there has been no omission of any of the requirements of the statute or the practice of the courts in regard to the levy upon the land.

IV. It is not contended that the effect of a levy under an attachment is not to create a lien upon the property, which would give the Crouse judgments a priority over

the judgments of the plaintiff, provided the levy was sufficient and the other proceedings were legal.

V. There was no irregularity in the proceedings which would destroy the lien created by the levy. 1. As the sheriff is to keep the property, he is not bound to return the warrant, at least until the title should be perfected under the judgment and execution. Then it would be too late to have any effect upon the proceedings, whether he returned it or not. (*Code,* § 242.) 2. The proper place to file the inventory is, with the clerk of the court. In that respect the Revised Statutes are changed by the Code. (*a.*) The officer issuing the attachment has nothing to do with the subsequent proceedings. No possible good could therefore be effected by a return to him. (*b.*) The Code provides (§ 232) that he make and return an inventory, and by section 242 he is required, when the warrant shall be fully executed, to return the same with his *proceedings,* to the court in which the action is brought. (*c.*) The inventory is a part of his proceedings. , (*d.*) Besides, if the Code designed that the requirements of the Revised Statutes should be followed as to the return, there would have been nothing said in the section about the inventory or return, but the officer would have been left to follow those requirements, under the directions contained in the first clause of the section. (§ 232.) 3. But whether that be so or not, the statute is merely directory, and the lien is not lost by a failure to return to the officer, especially as it would be the duty of the officer to return it to the court. 4. The omission to file the *lis pendens* cannot affect this case. (*Code,* § 172.) (*a.*) The effect of the omission was, that the pendency of the action was only constructive notice to the plaintiff, after the filing of *lis pendens.* (*b.*) But the plaintiff acquired no interest which could be affected by want of notice. (*c.*) If he was a subsequent purchaser or incumbrancer for value, by way of mortgage, value would have been material. But it is never necessary that a judg-

Rodgers *v.* Bonner.

ment creditor should have notice of a prior lien, in order to give it priority.

*By the Court,* BACON, P. J.  The fraudulent character of the conveyance by Bonner to his wife, which it was one of the objects of this suit to set aside, is conceded on all sides, and is so adjudged in the decree.  The only struggle here is as to the priority of claim as between the plaintiff and the firm of Crouse & Co., defendants, in respect to the surplus of some $1300 which remained in the sheriff's hands for distribution after the sale; and the sole question to be passed upon is, whether there was a sufficient levy made by the sheriff under the attachments issued in favor of Crouse & Co.

The facts as found by the referee; and about which there is no substantial controversy, are, that on the 26th day of November, 1866, Crouse and others commenced suits, and obtained attachments, against Bonner & Pelton, and Bonner alone.  On the same day, in the evening, the officer having the attachments went to the house of Bonner, No. 101 Fayette street, Syracuse, where he resided, with the view of levying the same on Bonner's property.  He made no proclamation to Bonner that he should seize or levy on the lot upon the attachments, but he did on that day make a pencil memorandum on a loose piece of paper, of the house and lot, with the intent, as the referee finds, to seize the same on the attachment.  On the next morning, before 8 o'clock, the clerk of the sheriff, by his direction, indorsed upon the attachment a memorandum of the seizure under the attachments, but the same was not then fully completed or signed by the sheriff until some days thereafter.  On the 27th of November, at the hour of 9 A. M., the plaintiff's judgment was recovered, and duly docketed, and execution forthwith issued thereon.  On the 30th of November the proper inventories were made by the sheriff, specifying the lot in question, and these

were not returned to the officer issuing the attachment, but were filed in the office of the county clerk on the 4th December, 1866.

The counsel for the appellant insists, in the first place, that no lien was acquired under the attachments, for the reason that no levy was made by the officer upon the real estate, which can only be done, as he claims, by an open, public and unequivocal seizure of, or an assertion of claim or dominion over, the property by virtue of the attachments. The cases he cites, following the leading case of *Beekman* v. *Lansing*, (3 *Wend.* 446,) are all cases of a levy upon personal property, where the rule requires that the officer should enter upon the premises, and if he does not actually seize and carry away the goods, must have them within his control, and take an inventory—in short, make his acts of such a public and open character that he would be liable as a trespasser, but for the protection of the execution. But no case has gone to any such length in respect to what is necessary to create a lien by virtue of a levy on real estate. In regard to real estate, it is not necessary that an officer holding an execution or an attachment go upon the property; it is not necessary that it should be even within his view. He must undoubtedly do some act, make some entry or memorandum, indicative of his intention; but having done that with such purpose in his mind, although he makes no vocal proclamation of the fact, he has made a legal levy. In *Burkhardt* v. *McClellan*, (15 *Abb.* 243, *note*,) the Court of Appeals held that while an attachment was only a lien from the time of its levy, yet that it was not necessary that the sheriff should actually take possession of the estate levied on. In *Learned* v. *Vandenburgh*, (8 *How.* 77,) Judge Parker states that the mere volition of the officer cannot be the execution of the attachment or the seizure of the property; but that to constitute a levy there must be a seizure, or an exercise of control; or, if the property be real estate, a claim made

to hold it under the attachment. In that case it appeared not only that there was no such claim, but by the inventory and the return to the attachment, there was a disclaimer of a levy as to everything but the personal property, and it was very properly held in that case that no lien was acquired under the attachment.

The case of *Perrin* v. *Leverett* (13 *Mass. Rep.* 128) is a strong authority to show that a levy may be made upon real property not within the sight of the officer, and of course in no respect within his control. It was a contest as to priority between two attachments, both levied upon a pew in a meeting-house. In one case the officer holding an attachment went to the meeting-house at 4 o'clock P. M., the doors being closed, and levied upon pew No. 82, and made return of his levy. In the other the officer, at 5 P. M., went with his attachment, and having procured the key, entered the meeting-house and went into the pew, and there levied on it. The court held the first levy to be good, and that priority of lien was acquired thereby. The court, in giving the opinion, say that "an attachment of real estate upon mesne process is almost entirely symbolical. The tenant is never dispossessed by it. The officer may go upon the land in the dead of the night, attach the land and return his precept, and without any act of notoriety whatever, and indeed with the writ in the officer's pocket until the return day, a lien is created in favor of the attaching creditor. Nay, more; if he never sets foot on the land, but makes a return that he has attached it, there seem to be no means whatever of questioning the fact."

In the light of this case, which shows very clearly what is a levy on real estate, it is evident that the officer holding the attachments of Crouse & Co. did all that was necessary to make a legal levy thereunder. He was not only upon the premises, but he performed an act which, in view of the intent with which it was done, and which

he was properly permitted to testify to, was unequivocal in its nature, and constituted a valid levy. Especially should this so be deemed, in view of the acts which followed, which referred and related back to the original entry made by the officer, and which, taken together, constituted the one act of a levy, under and by virtue of the attachments. The referee having found, as a matter of fact, from the evidence, that when the sheriff made the memorandum of the 26th of November, 1866, he intended to seize the house and lot in question, and afterwards put them into the inventory of the property seized under the attachment, his conclusion of law necessarily and properly follows, that he made the seizure before the lien of the plaintiff's judgment attached, and that consequently the defendants Crouse & Co. were entitled to priority in the payment of their judgment over the judgment of the plaintiff.

Upon the trial the counsel for the defendants offered in evidence the attachments, with the return thereto, to which the plaintiff's counsel objected, on the ground that the attachments had not been returned to the proper court or officer, or filed in the clerk's office. This objection was overruled, and the plaintiff's counsel excepted. The counsel claims that for the reason stated, this evidence was improperly admitted. Is it necessary to the validity of the attachment that it shall be returned to the officer issuing it; and if so, is the plaintiff in this suit entitled to take that objection? By the Revised Statutes (2 *R. S.* 4, § 8, *Edm. ed.*) it is provided that the inventory which is taken by the officer serving the attachment shall, within ten days after the seizure, be returned to the officer who issued the attachment. No provision is made in the Revised Statutes for the return of the attachment itself, either to the officer or the court; but by the 232d section of the Code, the officer is required to make and return an inventory; and the 242d section provides that when the

Rodgers *v.* Bonner.

warrant shall be fully executed and discharged, the sheriff shall return the same with his proceedings thereon, to the court in which the action is. brought. This seems to be the only provision touching the return of the attachment, made by law, and this was complied with by the return and filing in this case. But if not, the statute is merely directory to the officer, and his omission to do his duty cannot be availed of, in a collateral action, to defeat the remedy of the party sought in this case. The objection to the attachment on this ground was therefore not well taken.

The omission by the defendants to file notice of the pendency of their suit until after the plaintiff had obtained his judgment, has no effect to postpone the lien of the attachment to that of the judgment. Such notice, or the want of it, only affects a subsequent purchaser or incumbrancer whose conveyance or incumbrance is afterwards executed or recorded. The plaintiff was neither. He was a mere judgment creditor, in respect to whom it is never necessary that he should have notice of a prior lien in order to give it priority. He had acquired no interest in the premises which could be affected by notice, or the want of it.

It was not necessary to a valid execution of the attachment, that a copy of it should be served on the debtor. Section 235 of the Code evidently embraces shares of stock, or debts due the judgment debtor, and which are incapable of manual delivery, and not real estate, which is not in any sense within the language or spirit of the section.

The judgment seems to me to be in all respects right, and should be affirmed.

[ONONDAGA GENERAL TERM, October 5, 1869. *Bacon, Foster, Mullin* and *Morgan,* Justices.]